UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW CATANZARO,

    Plaintiff,                                        Hon. Gordon J. Quist

v.                                                         Case No. 1:09 CV 2

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment, (dkt. #57), and Defendant Wolter's Motion for Summary Judgment, (dkt. #64). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' Motion for Summary Judgment, (dkt. #57), be **granted in part and denied in part**. The undersigned further recommends that Defendant Wolter's Motion for Summary Judgment, (dkt. #64), be **denied**.

## BACKGROUND

In his amended complaint, Plaintiff asserts a variety of claims against numerous defendants. (Dkt. #8). Specifically, Plaintiff alleges that his Eighth Amendment rights were violated by: (1) exposure to second-hand tobacco smoke, (2) being forced to work with a back injury, and (3) exposure to toxic paint chips. Plaintiff also alleges that Defendants violated his rights to due process and to access the courts. Finally, Plaintiff alleges that violated his First Amendment right to be free from unlawful retaliation. Plaintiff seeks monetary and injunctive relief. On March 12, 2009, the

Honorable Gordon J. Quist dismissed the majority of claims asserted in Plaintiff's amended complaint. (Dkt. #12). Specifically, Judge Quist dismissed Plaintiff's Eighth Amendment claims, due process, and access to the courts claims. The Court also dismissed Plaintiff's claim that he was transferred to another facility for unlawful retaliatory purposes. Judge Quist ordered that Plaintiff's amended complaint be served on Defendants Caruso, Ball, Stine, Wolter, Butler, Booth, McKendry, and Tefft "solely on the retaliation claims not dismissed."[1] *Id.* These Defendants now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

---

[1] Despite the fact that Plaintiff's Eighth Amendment and First Amendment access to the courts claims were dismissed, Defendants have, for some unexplained reason, moved for summary judgment as to these claims and submitted evidence in support thereof. Oddly though, Defendants have failed to submit any evidence to support their claims for relief as to the majority of claims still at issue in this matter.

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

**ANALYSIS**

**I.      March 19, 2008 Incident**

Plaintiff asserts that on March 19, 2008, Defendant Booth charged him with a misconduct violation for filing a grievance on a "catalog order form." (Dkt. #8 at ¶ 16; Dkt. #73, Exhibit A3). Plaintiff claims that the grievance coordinator had "previously accepted and filed this grievance." Plaintiff asserts that Defendant Booth charged him with the misconduct violation in retaliation for having been named in two grievances he filed against Booth and other staff members. (Dkt. #8 at ¶ 16; Dkt. #58, Exhibit 3; Dkt. #73, Exhibit A1). Plaintiff was convicted of this misconduct charge by Defendant Butler. (Dkt. #8 at ¶¶ 17-18). This conviction was affirmed on appeal by Defendant Ball. (Dkt. #8 at ¶ 19). Plaintiff asserts that Defendants Booth, Butler, and Ball "conspired together" to retaliate against him. Defendants Booth, Butler, and Ball seek summary judgment as to this claim. The only evidence Defendants have submitted in support thereof are copies of the two grievances that Plaintiff asserts motivated Defendants to retaliate against him.

The elements of a First Amendment retaliation claim are as follows: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

1. Defendant Booth

Defendant does not dispute that Plaintiff was engaged in protected conduct. As for the second element, the Court finds that there exist unresolved questions of fact. As the Sixth Circuit has indicated, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). As the *Bell* court further stated, "while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out *only inconsequential actions*." *Id.* at 603. Accordingly, "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Id.* While perhaps a close call, the Court finds that charging a prisoner with a misconduct violation is neither an inconsequential nor de minimis action. Accordingly, the Court finds that there exist unresolved questions of fact regarding this particular element of the analysis.

With respect to the third element of the analysis, the Court likewise finds that there exist unresolved questions of fact. On February 21, 2008, Plaintiff filed Grievance ITF-08-02-00182-17A. (Dkt. #58, Exhibit 3). In this grievance, Plaintiff described an alleged incident that occurred between himself and Defendant Booth earlier that day. According to Plaintiff, Defendant Booth stated that inmates that file grievances against staff "are trouble." Booth then stated that he had "a place" for such prisoners. In response, Plaintiff stated, "look I just want to do my time and be left alone." Defendant Booth then allegedly stated to Plaintiff, "no, you are going to do hard time." When Plaintiff indicated that he would inform this Court that he was being threatened and harassed, Defendant Booth allegedly told Plaintiff that he would have Plaintiff "sent so far away you won't be able to contact [the Court]."

Defendant asserts that the February 21, 2008 incident was too remote in time to the March 19, 2008 incident for the two to be causally connected. The Court disagrees. Retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nevertheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). The Court finds that there exists a genuine factual dispute as to this element of the analysis. While the Court recognizes that almost one month passed between the two incidents, a reasonable person could nonetheless conclude, based on the evidence thus far submitted, that the two incidents are causally related.

In the February 21, 2008 incident, Defendant Booth allegedly threatened Plaintiff with "hard time" if he continued to file grievances against staff members. Less than one month later, Defendant Booth charged Plaintiff with a misconduct violation, which could be interpreted as an attempt by Booth to do precisely what he previously told Plaintiff he would do, namely, make him do "hard time" if he continued to file grievances against staff members. While the connection between these two incidents may appear somewhat tenuous, the Court nevertheless finds that such constitutes "a chronology of events from which retaliation may plausibly be inferred." Defendant Booth has submitted no evidence suggesting otherwise. The Court, therefore, recommends that Defendant Booth's motion for summary judgment as to this claim be denied.

2. Defendants Butler and Ball

In their brief, Defendants Butler and Ball assert that neither of them "had any involvement in the issuance of the [March 19, 2008] ticket (which is the activity that formed the basis for the retaliation claim)." Defendants assert that they are, therefore, "entitled to summary judgment on this retaliation claim due to lack of personal involvement." The Court disagrees.[2]

The parties do not dispute that Defendant Butler adjudicated the misconduct charge and found Plaintiff guilty, a decision affirmed by Defendant Ball. Defendants Butler and Ball nevertheless assert that they are entitled to relief because they were not "personally involved" in the conduct (i.e., issuing the misconduct ticket) that allegedly forms the basis for this particular claim. Plaintiff acknowledges that Defendants Butler and Ball were not involved in *issuing* the misconduct ticket in question. Instead, Plaintiff alleges that Defendants Butler and Ball *convicted* him of the misconduct charge for retaliatory purposes. Plaintiff asserts that Defendants' actions were "motivated" by Plaintiff's previous filing of a grievance against Defendant Booth. Defendants Butler and Ball have failed to establish that they were not personally involved in the events giving rise to this particular claim. The Court, therefore, recommends that Defendant Butler's and Ball's motion for summary judgment be **denied**.

**II.     May 7, 2008 Incident**

On May 7, 2008, Plaintiff filed a grievance alleging that Defendant Wolter (and others) were acting to violate his right of access to the courts. (Dkt. #8 at ¶¶ 21-30; Dkt. #65, Exhibit 1).

---

[2] The Court notes that neither Defendant has submitted any *evidence* to support their request for relief as to this particular claim. While Defendants Butler and Ball have each submitted affidavits in which they advance assertions concerning claims that the Court long ago dismissed, Defendants make absolutely no assertions in their affidavits concerning this claim.

Plaintiff asserts that on the same day, Defendant Wolter fired him from his prison job and falsely charged him with a misconduct violation. (Dkt. #8 at ¶ 30). Plaintiff asserts that Defendant Wolter took these actions in retaliation for the grievance Plaintiff filed against her that day. (Dkt. #8 at ¶ 33). Defendant Wolter asserts that she is entitled to summary judgment as to this claim. The Court disagrees.

Defendant Wolter does not contest that Plaintiff was engaged in protected conduct. With respect to the second element of the analysis, Defendant Wolter asserts that the fact that Plaintiff "continued writing numerous grievances" demonstrates that her conduct "hardly deterred" Plaintiff from engaging in protected conduct. This argument has been soundly rejected. As the Sixth Circuit recently observed:

> Thomas claims that Eby's issuing him the sexual-misconduct ticket constitutes an adverse action. Because inmates convicted of major-misconduct charges lose their ability to accumulate disciplinary credits for that month, inmates of ordinary firmness would be more reluctant to engage in protected conduct that may lead to the retaliatory issuance of misconduct tickets. Accordingly, Thomas has adequately alleged a sufficiently adverse action.
>
> MDOC disagrees on two fronts. First, it argues that Thomas claims in his complaint and his pro se brief that the misconduct ticket was "false," and that the result of the administrative appeal process disproves this allegation. The alleged falsity of the ticket, however, addresses causation, and accordingly is discussed below. Second, MDOC argues that Thomas's subsequent conduct-filing a grievance against Eby and then filing this lawsuit-demonstrates that issuing a major-misconduct ticket did not deter him from exercising his constitutional rights. This argument is flawed in at least two ways. First, the issue is whether a person of ordinary firmness would be deterred, not whether Thomas himself actually was deterred. Second, if subsequently challenging prison officials *ipso facto* demonstrated that the challenged action was not sufficiently adverse to undermine constitutional rights, no case alleging retaliation for exercising First Amendment rights could ever be brought. *Thus, we totally reject the argument that the later filing of complaints or grievances against challenged action demonstrates that the challenged action was not sufficiently adverse to constitute adverse action.*

*Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (emphasis added).

Plaintiff asserts that Defendant Wolter fired him from his prison job and falsely charged him with a misconduct violation for retaliatory reasons. The Court finds that these actions are neither inconsequential nor de minimis. Thus, the Court concludes that there exist unresolved questions of fact regarding this particular element of the analysis.

With respect to the causation element Defendant Wolter asserts that Plaintiff's claim fails because she was unaware of the grievance Plaintiff filed against her when she charged Plaintiff with a misconduct violation on May 7, 2008. Specifically, Wolter has submitted an affidavit in which she states, "[w]hen I wrote Plaintiff the major misconduct citation for Out of Place on May 7, 2008, I had no personal knowledge of any grievances filed against me by Plaintiff." (Dkt. #65, Exhibit 5). Plaintiff, however, has submitted an affidavit in which he asserts that approximately three and one-half hours before being fired from his prison job, he heard Wolter state, "I'm tired of this shit about his lawsuit and these grievances, and now he wrote a grievance on me, his ass is fired and I'm writing a ticket on him." (Dkt. #73, Exhibit A6). Plaintiff's submission creates a question of fact as to whether Defendant Wolter was aware, when she committed the allegedly retaliatory actions in question, that Plaintiff had filed a grievance against her. Accordingly, the undersigned recommends that Defendant Wolter's motion for summary judgment be denied.

**III.        August 14, 2008 Incident**

Plaintiff asserts that on August 7, 2008, while in the prison law library, he was involved in a confrontation with Defendant Stines concerning Stines' belief that Plaintiff was improperly assisting another inmate with his legal work. (Dkt. #8 at ¶¶ 59-63). According to Plaintiff, Stine was "in a rage"

and told Plaintiff, "you are suing everyone here you may as well sue me too." (Dkt. #8 at ¶ 64). Defendant Stine was also allegedly upset because Plaintiff had recently filed a grievance against her. (Dkt. #8 at ¶ 65). Plaintiff asserts that after "tearing through" his personal effects, Defendant Stine yelled at Plaintiff to "get out, get out now." (Dkt. #8 at ¶¶ 66-67). The following day, Defendant Stine allegedly approached Plaintiff and told him, "we had a misunderstanding the other day[,] me and you can get along all I ask is you sign off on that grievance." (Dkt. #8 at ¶ 70). Plaintiff declined. (Dkt. #8 at ¶ 71). Shortly thereafter, Defendant Stine gave Plaintiff two highlighter pens. (Dkt. #8 at ¶ 73).

On August 14, 2008, Defendant McKendry conducted a search of Plaintiff's cell and discovered that Plaintiff was in possession of three highlighter pens. (Dkt. #8 at ¶ 74). Plaintiff acknowledged that two of the pens belonged to him. (Dkt. #8 at ¶ 75). McKendry charged Plaintiff with a misconduct violation. Defendant McKendry allegedly told Plaintiff that he was "the target" of this search because of his "grievance writing." (Dkt. #8 at ¶ 77). Plaintiff asserts that Defendants Stine and McKendry "conspired" to charge Plaintiff with possession of contraband "in order to have him sent. . .to the hole, have his security level boosted up and make sure he didn't have a hope for parole and to get [Plaintiff] to sign off on" the aforementioned grievance against Defendant Stine. (Dkt. #8 at ¶ 76).

Defendant McKendry asserts that he is entitled to summary judgment as to this claim because Plaintiff "failed to engage in protected conduct prior to the search that Plaintiff claims is retaliatory." Plaintiff clearly asserts that the search in question (and the resulting misconduct charge) was orchestrated by Defendants Stine and McKendry as retaliation for the grievance that Plaintiff filed against Defendant Stine. As Defendants have not demonstrated that this grievance was frivolous, such constitutes protected activity.

Defendant also asserts that Plaintiff's retaliation claim must fail because "Plaintiff had no reasonable expectation of privacy in his area and the possessions within it." While accurate, this statement is completely irrelevant. The question presented by Plaintiff's claim is not whether the search in question was permitted by the Fourth Amendment, but whether the decision to conduct the search violated Plaintiff's First Amendment right to not be subjected to unlawful retaliation. Under Defendants' logic, a prisoner would never be able to bring a retaliation claim premised on a search of his cell or belongings. Not surprisingly, Defendants cite to no authority to support such an extreme position. The Court, on the other hand, notes that the Sixth Circuit has recognized that the search of an inmate's cell or belongings can form the basis for a claim of retaliation, the fact that the prisoner enjoys no expectation of privacy in his cell or belongings notwithstanding. *See, e.g., Bell v. Johnson*, 404 F.3d 997 (6th Cir. 2005). Accordingly, the Court recommends that Defendants Stine and McKendry's motion for summary judgment be denied.

### IV.     Defendants Caruso and Tefft

With respect to the claims still at issue in this matter, discussed above, Plaintiff has asserted no allegations against Defendant Caruso or Defendant Tefft. Accordingly, to the extent that Plaintiff's complaint is interpreted as asserting claims of retaliation against Defendant Caruso or Defendant Tefft, the Court recommends that such be dismissed. *See Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999) (to maintain a § 1983 action, the plaintiff must allege that the defendant actively engaged in unlawful behavior).

## V. Eleventh Amendment

Defendants assert that they are entitled to sovereign immunity in this matter. The retaliation claims, discussed above, asserted against Defendants Ball, Stine, Wolter, Butler, Booth, and McKendry are asserted against Defendants in their personal capacity only. Because Plaintiff has not sued these Defendants (for retaliation) in their official capacity, sovereign immunity is inapplicable.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #57), be **granted in part and denied in part**, and, further recommends that <u>Defendant Wolter's Motion for Summary Judgment</u>, (dkt. #64), be **denied**. Specifically, the undersigned recommends that any retaliation claims against Defendant Caruso and Defendant Tefft be dismissed, but that the other claims discussed herein be permitted to go forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: November 24, 2009  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge