UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW CATANZARO,

                Plaintiff,                          Hon. Gordon J. Quist

v.                                                Case No. 1:09 CV 2

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

                Defendants.
_____/

## **REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Summary Judgment, (dkt. #134); Defendant McKendry's Motion for Summary Judgment, (dkt. #136); and Plaintiff's Cross Motion for Summary Judgment, (dkt. #150). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' Motion for Summary Judgment, (dkt. #134), be **granted**; Defendant McKendry's Motion for Summary Judgment, (dkt. #136), be **denied**; and Plaintiff's Cross Motion for Summary Judgment, (dkt. #150), be **denied**.

## **BACKGROUND**

In his amended complaint, Plaintiff asserted a variety of claims against numerous defendants. (Dkt. #8). Specifically, Plaintiff alleged that his Eighth Amendment rights were violated by: (1) exposure to second-hand tobacco smoke, (2) being forced to work with a back injury, and (3) exposure to toxic paint chips. Plaintiff also alleged that Defendants violated his rights to due process

and to access the courts.  Finally, Plaintiff alleged that Defendants violated his First Amendment right to be free from unlawful retaliation.

On March 12, 2009, the Honorable Gordon J. Quist dismissed the majority of claims asserted in Plaintiff's amended complaint.  (Dkt. #12).  Specifically, Judge Quist dismissed Plaintiff's Eighth Amendment, due process, and access to the courts claims.  The Court also dismissed Plaintiff's claim that he was transferred to another facility for unlawful retaliatory purposes.  Judge Quist ordered that Plaintiff's amended complaint be served on Defendants Caruso, Ball, Stine, Wolter, Butler, Booth, McKendry, and Tefft "solely on the retaliation claims not dismissed."  *Id.*  Plaintiff's claims against Defendants Caruso and Tefft were subsequently dismissed.  (Dkt. #78, 86).  Defendants Ball, Butler, Wolter,[1] Booth, and McKendry now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably

---

[1]  In her brief, Wolter states that her last name is now Bussinger.  At the time of the events giving rise to the present action, however, Defendant's last name was Wolter as reflected in the various evidentiary and documentary items submitted by the parties.  To prevent confusion, therefore, the Court will continue to use Defendant's previous name.

find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398

F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the

nonmoving party's case," the non-moving party "must identify specific facts that can be established by

admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing

*Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view

the evidence in the light most favorable to the non-moving party, the party opposing the summary

judgment motion "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of

the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir.

2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere

allegations," but must instead present "significant probative evidence" establishing that "there is a

genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary

judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty

v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party

"must be able to point to some facts which may or will entitle him to judgment, or refute the proof of

the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,'

and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In

sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I.        March 19, 2008 Incident

Plaintiff asserts that on March 19, 2008, Defendant Booth charged him with a misconduct violation for filing a grievance on a "catalog order form." (Dkt. #8 at ¶ 16; Dkt. #73, Exhibit A3). Plaintiff claims that the grievance coordinator had "previously accepted and filed this grievance."

Plaintiff asserts that Defendant Booth charged him with the misconduct violation in retaliation for having been named in two grievances he filed against Booth and other staff members. (Dkt. #8 at ¶ 16; Dkt. #58, Exhibit 3; Dkt. #73, Exhibit A1). Plaintiff was convicted of this misconduct charge by Defendant Butler. (Dkt. #8 at ¶¶ 17-18). This conviction was affirmed on appeal by Defendant Ball. (Dkt. #8 at ¶ 19). Plaintiff asserts that Defendants Booth, Butler, and Ball "conspired together" to retaliate against him. Defendants Booth, Butler, and Ball seek summary judgment as to this claim.

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

### A.    Defendant Booth

Defendant Booth does not challenge Plaintiff's claim on the first two elements of the analysis, but instead asserts that he is entitled to summary judgment on the ground that Plaintiff cannot establish the requisite causal connection.

With respect to causation, courts recognize that retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*,

175 F.3d at 399 (citations omitted); *see also*, *Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir.,

Mar. 12, 2004) ("conclusory allegations of temporal proximity are not sufficient to show a retaliatory

motive"); *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation

must include a chronology of events from which retaliation may plausibly be inferred").

   In support of his motion, Defendant Booth has submitted an affidavit.  (Dkt. #135,

Exhibit B).  Booth asserts that as a Resident Unit Officer he must enforce the prison's rule so as to

"ensure the safety and security of the prisoner population as well as the staff at the correctional facility."

Booth maintains that on March 13, 2008, he "discovered that Plaintiff had submitted a grievance that

was typed on the back side of a catalog order form, which was not the intended use for the form."  Booth

asserts that he charged Plaintiff with the minor misconduct of misuse of property "because it was my

belief that Plaintiff was attempting to circumvent the need for him to purchase his own office supplies"

which "[i]n my view. . .[was] a clear violation of this misconduct rule."  Booth further asserts that his

decision to charge Plaintiff with this misconduct was unrelated to any grievances that Plaintiff may have

filed.  *Id.*  Plaintiff was found guilty of the misconduct violation after admitting to the conduct in

question.  (Dkt. #135, Exhibit E, Attachment 1).  In an affidavit, Plaintiff acknowledges that the

grievance in question was "typed on the back of a catalog order form."  (Dkt. #150, Exhibit C-1).

   The Sixth Circuit has held that where an inmate alleges that a prison official falsely

charged him with a misconduct violation for retaliatory purposes, the prison official is entitled to relief

if the prisoner was found guilty (based on some quantum of evidence) of the misconduct violation.  *See,*

*e.g., Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir., Nov. 17, 2005) ("[a] finding of guilt based

upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim'")

(quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)).  Implicit in this conclusion is that a

finding that the allegedly retaliatory misconduct charge was supported by the evidence constitutes sufficient evidence on the issue of causation to warrant summary judgment for the prison official.

The Court recognizes that Plaintiff has not alleged that Defendant Booth *falsely* charged him with a misconduct violation.  This distinction is of no consequence, however.  Based on the above authority, Plaintiff's concession of the facts that form the basis of his misconduct charge and conviction supports Defendant's position that Plaintiff cannot establish the requisite causal link to maintain a retaliation claim.  Aside from assertions of "bare allegations of malice," Plaintiff offers no evidence that Defendant Booth charged him with a misconduct violation for a retaliatory purpose.  Thus, Defendant Booth is entitled to summary judgment.

Plaintiff attempts to circumvent this conclusion by asserting in a affidavit, (dkt. #150), that Defendant Booth previously observed other prisoners "using catalog order forms. . .and a multitude of other forms" for improper purposes without charging them with misconduct violations.  Plaintiff appears to be asserting that Defendant Booth is not entitled to summary judgment because he has allegedly engaged in selective enforcement of the prison rule in question.

The Court recognizes that the Sixth Circuit has *suggested* that the general rule articulated above (i.e., that a guilty finding on a misconduct charge precludes a retaliation claim concerning the issuance of such) might be overcome if the prisoner introduces evidence that the prison official in question engaged in selective enforcement of the relevant prison rules and regulations.  *See Eby*, 481 F.3d at 442.  Specifically, the *Eby* court observed as follows:

> According to MDOC, Thomas cannot show causation without first demonstrating that the misconduct charge was ultimately resolved in his favor, which he cannot do because he was convicted and the conviction was affirmed in the prison's review process.  In other words, MDOC argues that because the administrative process concluded that Eby's allegations were not false, Thomas cannot show a retaliatory motive.  In

essence, MDOC's argument imports the favorable-termination requirement of *Heck* into cases where the habeas exception to § 1983 does not apply.

On *summary judgment,* we analyze the causation element of a retaliation claim under the burden-shifting framework announced in *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). After a plaintiff shows that his protected conduct was a motivating factor in the defendant's action, the defendant may thwart the retaliation claim by showing that it would have taken the same action even without the protected activity. MDOC cites *Henderson v. Baird,* 29 F.3d 464 (8th Cir.1994), *cert. denied,* 515 U.S. 1145, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995), as well as a bevy of our unpublished opinions relying on *Henderson* and *Hynes v. Squillace,* 143 F.3d 653 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246, 142 L.Ed.2d 202 (1998), in support of the proposition that a proven infraction of prison rules will generally satisfy the defendant's burden. Notably, each of these cases was decided on summary judgment, and therefore, each is distinguishable from the present case, which the district court dismissed sua sponte before service of the complaint on the sole defendant, Eby.

However, MDOC cites no case applying the *Mount Healthy* standard on a motion to dismiss, and for good reason - it makes little sense to apply it at the pleading stage. A complaint cannot be dismissed unless "the plaintiff can prove *no set of facts* " that would entitle him to relief. Here, Thomas could establish multiple sets of facts that would prove his § 1983 claim. For example, it is possible that after discovery, Thomas would be able to demonstrate that inmates regularly expose their genitals to guards without consequence. Or perhaps he could prove that he had exposed himself to Eby in the past, but she had never pursued disciplinary action until after he filed a grievance against another guard. In either of these cases, Thomas would be able to show that his filing a grievance was "a motivating factor" behind the misconduct ticket. And Eby likely would be unable to meet her burden to "show that [s]he would have taken the same action in the absence of the protected activity." While it may be unlikely that Thomas could prove such facts, the district court cannot dismiss a pro se prisoner's pleading merely "because the court finds the plaintiff's allegations unlikely." Accordingly, we conclude that Thomas adequately pleaded a claim for retaliation.

*Id.* at 441-42 (internal citations omitted).

For the following reasons, however, the Court is not persuaded by Plaintiff's argument that Defendant Booth is not entitled to summary judgment on the ground that he selectively enforced the prison rule in question.  First, the language in *Eby* quoted above on which Plaintiff's argument relies is clearly dicta unnecessary to the court's holding and, therefore, is not binding on this Court.

Second, the claims reviewed by the *Eby* court had been dismissed sua sponte by the District Court pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), which requires a court to dismiss any complaint which fails to state a claim upon which relief can be granted.  Defendant Booth is not seeking relief on the ground that Plaintiff has failed to state a claim, but is instead seeking relief pursuant to a properly supported motion for summary judgment.  The *Eby* court did not suggest that summary judgment is precluded whenever evidence of selective enforcement is presented, but instead merely observed that sua sponte dismissal of a retaliation claim is inappropriate if the prisoner *might* be able to present evidence (e.g., evidence of selective enforcement) which, if believed, would entitle him to relief.  As the *Eby* court further recognized, however, even if "a plaintiff shows that his protected conduct was a motivating factor in the defendant's action," the defendant is nonetheless entitled to summary judgment if he shows "that [he] would have taken the same action even without the protected activity."  That is precisely what Defendant Booth has done in this instance, present evidence that his challenged action was unrelated to Plaintiff's protected conduct.

Finally, the Court is unpersuaded by Plaintiff's argument because it would require this Court to second-guess hundreds (and perhaps thousands) of decisions made every single day by prison officials in the exercise of their professional judgment, something the United States Supreme Court has long held is an activity for which federal courts are unqualified.  *See, e.g., Bell v. Wolfish*, 468 U.S. 520, 546-47 (1979) (prison officials "should be accorded wide-ranging deference in the adoption and

execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security").

In sum, while Plaintiff has not forfeited all constitutional protections by reason of his conviction and confinement in prison, *Wolfish*, 441 U.S. at 545, he only retains such First Amendment rights as are neither incompatible with his status as a prisoner nor legitimate penological objectives. *See Hudson v. Palmer*, 468 U.S. 517, 523 (1984).  Plaintiff enjoys no constitutional right to disobey legitimate prison rules and regulations.  Plaintiff conceded that he was guilty of the misconduct violation in question and Defendant Booth has submitted evidence that his decision to charge Plaintiff with the violation in question was unrelated to Plaintiff's protected conduct.  Accordingly, for the reasons discussed above, the undersigned recommends that Defendant Booth is entitled to summary judgment as to this claim.  The undersigned further recommends that Plaintiff's motion for summary judgment as to this claim be denied.

### B.      Defendant Butler

Defendant Butler also does not challenge whether Plaintiff can satisfy the first two elements of the retaliation analysis, but rather asserts that he is entitled to summary judgment on the ground that Plaintiff cannot establish the requisite causal connection.

In support of his motion, Defendant Butler has submitted an affidavit.  (Dkt. #135, Exhibit C).  Butler asserts that as an Assistant Resident Unit Supervisor one of his duties is "to hear evidence in hearings involving minor misconduct tickets and impose sanctions if I determined that the prisoner should be found guilty of the misconduct."  Butler asserts that when conducting such hearings he "do[es] not have a preconceived notion that staff testimony is more credible than a prisoner's

testimony." Butler asserts that he conducted the misconduct hearing on the charge that Plaintiff misused property. Butler found Plaintiff guilty of the charge"based on his admission to the conduct constituting the violation." *Id.* Defendant Butler has also submitted excerpts of Plaintiff's deposition in which Plaintiff concedes that he has no evidence that Defendant Butler retaliated against him. (Dkt. #135, Exhibit A at 54-55).

For the same rationale articulated in the preceding section, the undersigned concludes that Defendant Butler is entitled to summary judgment. Plaintiff concedes the facts that form the basis for Butler's decision to convict him of this misconduct. Plaintiff also conceded during his deposition that he possessed no evidence that Defendant Butler's actions were motivated by a desire to retaliate. Again, aside from assertions of "bare allegations of malice," Plaintiff offers no evidence that Defendant Butler found him guilty of this charge for a retaliatory purpose. As for Plaintiff's argument that Defendant Butler is not entitled to summary judgment because he has allegedly engaged in selective enforcement of the prison rule in question, the Court rejects such for the reasons articulated above. Accordingly, the undersigned recommends that Defendant Butler is entitled to summary judgment as to this claim. The undersigned further recommends that Plaintiff's motion for summary judgment as to this claim be denied.

C.      Defendant Ball

Defendant Ball does not challenge whether Plaintiff can satisfy the first two elements of the retaliation analysis, but rather asserts that he is entitled to summary judgment on the ground that Plaintiff cannot establish the requisite causal connection.

In support of his motion, Defendant Ball has submitted an affidavit. (Dkt. #135, Exhibit E). Ball asserts that in his capacity as an Assistant Deputy Warden one of his duties is to "handle appeals of minor misconduct tickets written and adjudicated by lower level staff." Ball asserts that when reviewing such an appeal, he is "reviewing to make sure that no procedural irregularities occurred during the hearing." Ball asserts that "[i]t is not my role as the reviewer after adjudication to assess the credibility of one witness over another." Ball further asserts that "it is not customary to order a rehearing when the issue is simply credibility between the prisoner's testimony and the officer's testimony" as "[t]he hearing officer. . .is in the best position to make that determination." Ball reviewed Plaintiff's appeal of his conviction for misuse of property and determined that "no violation of due process occurred in this case and the issues Plaintiff raised were adequately addressed at the hearing." Defendant Ball has also submitted excerpts of Plaintiff's deposition in which Plaintiff concedes that he has no evidence that Defendant Ball retaliated against him. (Dkt. #135, Exhibit A at 50-53).

For the same rationale articulated above, the Court concludes that Defendant Ball is entitled to summary judgment. Plaintiff concedes the facts that form the basis of his conviction and presents no evidence that would have supported a reversal by Ball of that determination. Plaintiff also conceded during his deposition that he possessed no evidence that Defendant Ball's actions were motivated by a desire to retaliate. Aside from assertions of "bare allegations of malice," Plaintiff offers no evidence that Defendant Ball's actions were motivated by his protected conduct. As for Plaintiff's argument that Defendant Ball is not entitled to summary judgment because he has allegedly engaged in selective enforcement of the prison rule in question, the Court rejects such for the reasons articulated above. The undersigned, therefore, recommends that Defendant Ball is entitled to summary judgment

as to this claim.  The undersigned further recommends that Plaintiff's motion for summary judgment as to this claim be denied.

## II.        May 7, 2008 Incident

On May 7, 2008, Plaintiff filed a grievance alleging that Defendant Wolter (and others) were acting to violate his right of access to the courts.  (Dkt. #8 at ¶¶ 21-30; Dkt. #65, Exhibit 1). Plaintiff asserts that later the same day, Defendant Wolter fired him from his prison job and falsely charged him with a misconduct violation.  (Dkt. #8 at ¶ 30).  Plaintiff asserts that Defendant Wolter took these actions in retaliation for the grievance Plaintiff filed against her earlier that day.  (Dkt. #8 at ¶ 33). Defendant Wolter does not challenge Plaintiff's retaliation claim on the first two elements of the analysis, but instead asserts that she is entitled to summary judgment on the ground that Plaintiff cannot establish the requisite causal connection.

In support of her motion, Defendant Wolter has submitted an affidavit.  (Dkt. #135, Exhibit F).  Wolter asserts that as a Resident Unit Officer her "ultimate duty is to ensure the safety and security of the prisoner population as well as the staff of the correctional facility."  Wolter asserts that to accomplish this goal, "there are rules that must be followed by prisoners in order to maintain a safe and healthy environment."

Wolter asserts that on May 7, 2008, Plaintiff was working as a porter in one of facility's housing units.  Wolter asserts that "[s]ince porter jobs are highly sought after in the prison system, it is important to maintain a workforce of inmates who take their work seriously and comply with the rules." Wolter further asserts that "[a] prisoner who cannot comply with the job rules, yet continues to keep their job, creates a disruption within the correctional environment that could potentially be harmful to

the safety and security of prisoners as well as staff within the system."  According to Wolter, porters "are not allowed to leave the unit (or job assignment) unless they have staff authorization to leave the assignment."

Wolter states that on May 7, 2008, she observed Plaintiff "exit" the housing unit where he was presently working as a porter.  Wolter asserts that because "Plaintiff had committed a clear violation of MDOC policy requiring prisoners to remain only where they are authorized," she "issued a major misconduct ticket against [Plaintiff] for being Out of Place."  Wolter states that "[t]his incident. . .was not the first time that Plaintiff left his job assignment without permission," as "Plaintiff had [previously] been verbally warned about this conduct on more than one occasion."  These assertions are consistent with content of the misconduct report that Defendant Wolter completed.  (Dkt. #135, Exhibit F, Exhibit 2).  The hearing officer's report reveals that Plaintiff was found guilty of the misconduct charge after conceding that he left the housing unit while on duty.  (Dkt. #135, Exhibit F, Exhibit 3).

Defendant Wolter asserts that she is entitled to summary judgment as to these claims. Defendant does not contest that Plaintiff was engaged in protected conduct, but instead asserts that Plaintiff cannot satisfy the second (adverse action) or third (causation) elements of the analysis.

With respect to the adverse action element of the analysis, Defendant Wolter asserts that the fact that Plaintiff "continued writing numerous grievances" demonstrates that her conduct "hardly deterred" Plaintiff from engaging in protected conduct.  This argument has been soundly rejected.  As the Sixth Circuit recently observed:

> Thomas claims that Eby's issuing him the sexual-misconduct ticket constitutes an adverse action.  Because inmates convicted of major-misconduct charges lose their ability to accumulate disciplinary credits for that month, inmates of ordinary firmness would be more reluctant to engage in protected conduct that may lead to the retaliatory

issuance of misconduct tickets.  Accordingly, Thomas has adequately alleged a sufficiently adverse action.

MDOC disagrees on two fronts.  First, it argues that Thomas claims in his complaint and his pro se brief that the misconduct ticket was "false," and that the result of the administrative appeal process disproves this allegation.   The alleged falsity of the ticket, however, addresses causation, and accordingly is discussed below.  Second, MDOC argues that Thomas's subsequent conduct-filing a grievance against Eby and then filing this lawsuit-demonstrates that issuing a major-misconduct ticket did not deter him from exercising his constitutional rights.  This argument is flawed in at least two ways.  First, the issue is whether a person of ordinary firmness would be deterred, not whether Thomas himself actually was deterred.  Second, if subsequently challenging prison officials *ipso facto* demonstrated that the challenged action was not sufficiently adverse to undermine constitutional rights, no case alleging retaliation for exercising First Amendment rights could ever be brought.  *Thus, we totally reject the argument that the later filing of complaints or grievances against challenged action demonstrates that the challenged action was not sufficiently adverse to constitute adverse action*.

*Eby*, 481 F.3d at 441 (emphasis added).

Plaintiff asserts that Defendant Wolter fired him from his prison job and falsely charged him with a misconduct violation for retaliatory reasons.  The Court finds that these actions are neither inconsequential nor de minimis.  Thus, the Court concludes that there exist unresolved questions of fact regarding this particular element of the analysis.

With respect to the causation element Defendant Wolter asserts that she is entitled to summary judgment because her actions were motivated by Plaintiff's violation of prison rules not his protected conduct.  As previously noted, Wolter has presented evidence that she observed Plaintiff "exit" the housing unit where he was presently working, which constituted a violation of MDOC policy.  Wolter charged Plaintiff with a misconduct violation for which he was found guilty.  As discussed

above, Plaintiff's conviction on this charge "checkmates" his claim that he was charged with the misconduct for retaliatory purposes.

As for Plaintiff's claim that he was fired from his job as a porter for retaliatory purposes, the result is the same. Defendant Wolter asserts in her affidavit that she has "no authority to terminate a prisoner from his job assignment," as such decisions can only be made by the classification director. Wolter asserts that while she may have recommended that Plaintiff's job assignment be terminated for violating MDOC policy, she was not responsible for making the decision whether to terminate Plaintiff's job assignment. Thus, Defendant Wolter has established that to the extent that she was involved in the decision to terminate Plaintiff's job assignment such was based on Plaintiff's violation of prison policy not his protected conduct.

Accordingly, the undersigned recommends that Defendant Wolter's motion for summary judgment be granted, and Plaintiff's motion for summary judgment be denied, as to these claims.

## III.        August 14, 2008 Incident

Plaintiff asserts that on August 7, 2008, while in the prison law library, he was involved in a confrontation with Defendant Stine concerning Stine's belief that Plaintiff was improperly assisting another inmate with his legal work. (Dkt. #8 at ¶¶ 59-63). According to Plaintiff, Stine was "in a rage" and told Plaintiff, "you are suing everyone here you may as well sue me too." (Dkt. #8 at ¶ 64). Defendant Stine was also allegedly upset because Plaintiff had recently filed a grievance against her. (Dkt. #8 at ¶ 65). Plaintiff asserts that after "tearing through" his personal effects, Defendant Stine yelled at Plaintiff to "get out, get out now." (Dkt. #8 at ¶¶ 66-67). The following day, Defendant Stine allegedly approached Plaintiff and told him, "we had a misunderstanding the other day[,] me and you

can get along all I ask is you sign off on that grievance." (Dkt. #8 at ¶ 70). Plaintiff declined. (Dkt. #8 at ¶ 71). Shortly thereafter, Defendant Stine gave Plaintiff two highlighter pens. (Dkt. #8 at ¶ 73).

On August 14, 2008, Defendant McKendry conducted a search of Plaintiff's cell and discovered that Plaintiff was in possession of three highlighter pens. (Dkt. #8 at ¶ 74). Plaintiff acknowledged that two of the pens belonged to him. (Dkt. #8 at ¶ 75). McKendry charged Plaintiff with a misconduct violation. Defendant McKendry allegedly told Plaintiff that he was "the target" of this search because of his "grievance writing." (Dkt. #8 at ¶ 77). Plaintiff asserts that Defendants Stine and McKendry "conspired" to charge Plaintiff with possession of contraband "in order to have him sent. . .to the hole, have his security level boosted up and make sure he didn't have a hope for parole and to get [Plaintiff] to sign off on" the aforementioned grievance against Defendant Stine. (Dkt. #8 at ¶ 76).

Defendant McKendry does not contest that Plaintiff was engaged in protected conduct and can establish the requisite causal connection. Instead, Defendant asserts that he is entitled to summary judgment because his conduct was insufficient to deter a person of ordinary firmness from engaging in protected conduct. Specifically, Defendant argues that while he charged Plaintiff with a misconduct violation (for possessing contraband), "the ticket was never heard and no finding was made as to Plaintiff's culpability." According to Defendant, because "no sanction was imposed for Plaintiff's possession of highlighter markers," his act of charging Plaintiff with the misconduct violation was a de minimis act insufficient to deter a person of ordinary firmness from engaging in protected conduct. The Court is unpersuaded.

As the Sixth Circuit has recognized, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). As the *Bell* court further stated,

"while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out *only inconsequential actions*." *Id.* at 603. Accordingly, "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Id.* As courts recognize, charging a prisoner with a misconduct violation is not an inconsequential action. *See, e.g., King v. Zamiara*, 150 Fed. Appx. 485, 493 (6th Cir., Oct. 7, 2005) ("[c]harging an inmate with misconduct is an adverse action because serious consequences can flow from erroneous charges"); *Scott v. Churchill*, 2000 WL 519148 at *2 (6th Cir., Apr. 6, 2000) ("the filing of a false misconduct report could deter a person of ordinary firmness from exercising his First Amendment rights"); *Campbell v. Gause*, 2011 WL 825016 at *8 (E.D. Mich., Feb. 1, 2011) (recognizing that whether the issuance of a minor misconduct ticket could constitute an adverse action is "a question of fact"). The Court further notes that the fact that "the ticket was never heard" raises questions about the legitimacy of the charge which certainly does not advance McKendry's cause. In sum, the Court finds that there exist unresolved questions of fact regarding this particular element of the analysis.

Accordingly, the undersigned recommends that Defendant McKendry's motion for summary judgment be **denied**. The undersigned also recommends that Plaintiff's motion for summary judgment be **denied** as to this particular claim.

Defendant McKendry also asserts that he is entitled to qualified immunity. The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated. *Id.* Generally, when government officials

perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996). The question of whether a defendant enjoys qualified immunity is a question of law for the Court to resolve. *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001).

When evaluating claims of qualified immunity, the Court employs a two-step analysis. The Court first determines "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If such fail to establish a violation of the plaintiff's constitutional rights, the defendant is entitled to immunity. *See Callahan*, 129 S.Ct. at 816. On the other hand, if the facts establish a violation of the plaintiff's constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted. The defendant is entitled to qualified immunity unless his "conduct violated a clearly established constitutional right." *Id.* The inquiry whether a particular right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (citing *Saucier*, 533 U.S. at 201). The contours of the right in question "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005) (quoting *Saucier*, 533 U.S. at 202). The focus of this inquiry is "on whether the officer had fair notice that her conduct was unlawful." *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005).

Where neither the motion for qualified immunity nor the opposition thereto is supported by evidence, the first step of the qualified immunity analysis focuses on the allegations in the plaintiff's

complaint and whether such state a claim for violation of the plaintiff's constitutional rights.  If, on the other hand, the motion for qualified immunity and/or the opposition thereto are supported by evidence, such must be considered pursuant to the summary judgment standard articulated above.  Thus, if the evidence submitted by the parties demonstrates the existence of a genuine factual dispute, the resolution of which is essential to determining whether the defendant violated the plaintiff's constitutional rights, qualified immunity is not warranted.  However, if the evidence establishes that the defendant did not violate the plaintiff's constitutional rights, qualified immunity is appropriate.  *See, e.g., Scott v. Harris*, 550 U.S. 372, 377-86 (2007) (officer entitled to qualified immunity where evidence was such that "no reasonable jury" could have concluded that officer violated the plaintiff's constitutional rights).  Likewise, if the right in question was not "clearly established" at the time the defendant acted, the defendant is entitled to qualified immunity.

Generally, to find a clearly established constitutional right, the district court "must find binding precedent by the Supreme Court, its Court of Appeals or itself."  *Fisher*, 398 F.3d at 845 (quoting *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988)).  In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions "both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting."  *Fisher*, 398 F.3d at 845-46 (quoting *Seiter*, 858 F.2d at 1177).  A single idiosyncratic opinion from another circuit's court of appeals, however, is insufficient to put a defendant on notice of how the Sixth Circuit might decide the issue in question.  *See Davis v. Holley*, 835 F.2d 1175, 1182 (6th Cir. 1987).

In determining whether a defendant is entitled to qualified immunity, the focus is on the objective legal reasonableness of his actions in light of clearly established law as it existed when he engaged in the challenged conduct. *See Anderson*, 483 U.S. at 640; *Harlow*, 457 U.S. at 818; *Fisher*, 398 F.3d at 845. Accordingly, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fisher*, 398 F.3d at 845 (quoting *Saucier*, 533 U.S. at 202). Finally, while it "is often appropriate" to evaluate qualified immunity claims by analyzing the two analytical steps in sequence, such is no longer mandated. *See Callahan*, 129 S.Ct. at 818. As the *Callahan* Court stated, "[t]he judges of the district courts. . .should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

As discussed above, there exists a genuine factual dispute as to whether Defendant McKendry subjected Plaintiff to unlawful retaliation. Moreover, based on the Sixth Circuit authority identified above, a reasonable prison official would have understood that charging an inmate with a misconduct violation can constitute a sufficiently adverse action to support a retaliation claim. Accordingly, the undersigned recommends that Defendant McKendry is not entitled to qualified immunity.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (dkt. #134), be **granted**; Defendant McKendry's Motion for Summary Judgment, (dkt. #136), be **denied**; and Plaintiff's Cross Motion for Summary Judgment, (dkt. #150), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  December 16, 2011

  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge